**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.                                       No. CIV 02-1212 BB/LAM
                                             No. CIV 02-1213 BB/LAM

BELL GAS INC., ET AL.,

        Defendants.


## MEMORANDUM OPINION AND ORDER

       THIS MATTER comes before the Court for consideration of a number of motions for summary judgment filed by Defendants in these two cases.  In case number CIV 02-1212, Defendant ABC Propane ("ABC") has filed a motion for summary judgment on the merits (Doc. 82); Defendant Bell Gas, Inc. ("Bell Gas") has filed a motion for summary judgment maintaining it was not Plaintiff's employer (Doc.84); and Defendant Cortez Gas Company ("Cortez") has filed a similar motion (Doc. 85).  In case number CIV 02-1213, Defendant Ballew Distributing ("Ballew") has filed a motion to dismiss or for summary judgment claiming it does not qualify as an employer under Title VII (Doc. 80);[1] Ballew has also filed a motion for summary judgment on the merits (Doc. 81); and Bell Gas has filed a motion for summary judgment maintaining it was not Plaintiff's employer (Doc. 83).  The Court has reviewed the submissions of the parties and the relevant law.  For the reasons set forth below, the Court finds that all of the motions will be denied.

---

       [1]The motions in case number CIV 02-1213 were filed in the same file as CIV 02-1212, and the document numbers refer to the 02-1212 file.  This is because the cases were originally consolidated for some purposes, and this consolidation was only recently rescinded (Doc. 116, case 02-1212).  The Court is addressing all the motions filed in both cases in this single opinion, as a matter of convenience.

This case arises out of Evelyn Silva's ("Silva") employment with two of the Defendants, first with Ballew and then with ABC.  Silva claims that while she was employed at Ballew she was subjected to a hostile environment based on her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*   Silva filed a charge of discrimination with Plaintiff ("EEOC"), which eventually resulted in the EEOC's filing of case number 02-1213.  While Silva's EEOC proceedings were ongoing, she went to work for ABC.  After only three days on the job she was fired, allegedly in retaliation for her protected conduct (the EEOC proceedings) directed at Ballew.  The EEOC filed case number 02-1212 as a result of this firing.  Defendants in both cases have filed the motions for summary judgment listed above.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999).  Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor.  *Id.*  The Court will analyze the motions for summary judgment under this standard.

### ABC's Motion

**Merits:**  ABC's first argument in support of summary judgment is that Larry Arnold, the ABC employee who fired Silva, did not know she had engaged in protected conduct and therefore could not have been retaliating against her in violation of Title VII.  *See Petersen v. Utah Dep't of*

*Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (an employer cannot engage in unlawful retaliation if it does not know that the employee has engaged in conduct protected by Title VII).  In other words, ABC claims that Arnold, when he fired Silva, did not know she had filed a discrimination charge against Ballew.  Viewed in the light most favorable to EEOC, however, there is a factual dispute as to Arnold's knowledge at the time of the firing.  Arnold testified in his deposition as follows:  (1) on the day of the firing, Tom Lancaster (a corporate officer of ABC) called Arnold and told him Silva "had" a sexual harassment charge against Ballew [Exh. G, EEOC Resp. to ABC MSJ, p. 91]; (2) about three minutes later, Eugene Bell ("Eugene") called Arnold and asked Arnold if he knew Silva was a previous employee of Ballew, and knew Silva had a lawsuit against "us" [*id.*, p. 92; Exh. 1, ABC MSJ, pp. 77-78]; and (3) Arnold understood that Eugene wanted Silva terminated, and if Eugene wanted Arnold to do something, he would do it [Exh. G, pp. 83-84].  Also, Gloria Jones, another ABC employee, testified that on the day of the firing, Arnold told her he had just received a call, that Silva had a lawsuit against Ballew, and she needed to be terminated [Exh. 2, ABC MSJ, p. 47].  This evidence, if believed by a factfinder, would support a determination that Arnold knew Silva had filed a discrimination claim of some sort against Ballew, knew that Eugene was upset about Silva's action, and fired Silva as a result.

In an attempt to obtain summary judgment despite the evidence detailed above, ABC makes three arguments.  First, ABC contends that Arnold did not know any of the details of Silva's discrimination claim against Ballew.  Such knowledge of the details, however, is not necessary; an employer violates Title VII if it terminates an employee because of that employee's protected conduct, regardless of whether the employer knew the details underlying the protected conduct.

ABC next argues that Ballew did not qualify as an "employer" under Title VII, because it did not have a sufficient number of employees.  Since Ballew was not an employer, according to ABC, Silva could not have reasonably believed that Ballew had violated Title VII; absent such reasonable

belief, Silva's discrimination claims should not be considered protected conduct.  *See Crumpacker v. Kansas Dep't of Human Resources*, 338 F.3d 1163, 1171-72 (10th Cir. 2003) (action based on unreasonable belief that a Title VII violation had occurred is not protected from retaliation; but employees must be able to report conduct they reasonably believe violates Title VII, without fear of retaliation).  There are several problems with this argument.

First and foremost, as discussed below in the section of this opinion addressing Ballew's motions, the Court provisionally finds that Bell Gas employees must be included in the number of employees to be considered with respect to the discrimination charge against Ballew.  Doing so means the fifteen-employee requirement established by Title VII is met.

In addition, ABC presented no evidence concerning Silva's beliefs or knowledge at the time she filed her charge of discrimination.  The evidence presented by Ballew and by EEOC, in connection with Ballew's motion, indicates the number of Ballew employees was at one time, during Silva's tenure there, more than fifteen.  Even by Ballew's own count, which is disputed by EEOC, the number of employees dropped below fifteen only after two or three employees left, but remained at thirteen or fourteen during the relevant period.  [Doc. 80, Ballew brief, p. 3]  This is not a case, then, where any reasonable person would have automatically known that Ballew did not have a sufficient number of employees, for a sufficient period of time,  to be considered an employer under Title VII's definition of that term.  It was therefore incumbent on ABC to present some evidence as to Silva's state of mind, to prove she knew how many employees Ballew had, knew the definition of "employer" under Title VII, or for some other reason did not have a reasonable belief that Ballew had committed violations of Title VII when she filed her charge with EEOC.  ABC presented no such evidence.

The Court also notes that EEOC, the agency in charge of enforcing Title VII, apparently believes Ballew violated Title VII and qualifies as an employer under that statute.  It would be

incongruous to hold, as a matter of undisputed fact, that Silva's knowledge of Title VII is superior to that of EEOC and that she could not have had a reasonable belief that Ballew was covered by Title VII and had violated that law.

ABC's final argument is that, accepting as true Arnold's deposition testimony that he fired Silva at Eugene's direction, no retaliatory motive can exist. According to ABC, Eugene had no connection to ABC and was not in a position of authority over ABC; his retaliatory intent, therefore, cannot be attributed to ABC. Also, Arnold cannot be found to have retaliatory intent of his own, because he was just doing what he believed he had been told to do. This argument is unconvincing. The bottom line is that there is evidence Arnold fired Silva because she had filed a discrimination claim against Ballew. Whether he did so against his wishes, and only because he thought Eugene wanted him to, does not change the impact of that evidence. In addition, the fact that he may have acted at Eugene's behest, even though Eugene ostensibly had no authority to impose his will on ABC, similarly does not alter the legal impact of that evidence. Even if Arnold personally did not care about Silva's discrimination claim against Ballew, and would not have fired her for filing that claim if he had not been directed to do so, the fact remains there is evidence he fired her because she had filed the discrimination claim. Given that evidence, ABC cannot be insulated from liability simply because Arnold may have followed the orders of a person who did not have the actual authority to give him such orders.[2]

In sum, there is evidence that Arnold was told about Silva's discrimination claim against Ballew, fired her the same day, and told Jones that Silva needed to be terminated because she had a

---

[2]ABC cited no authority for this argument, other than general authority for the proposition that a retaliatory motive is necessary. The Court's own research establishes that if a decisionmaker merely rubber-stamps a recommendation by a third party, as Arnold allegedly did here, that third party's retaliatory or discriminatory motivation will be imputed to the decisionmaker. *English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1011 (10th Cir. 2001); *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999). This is true even if the biased third party had no power to fire the employee, as ABC claims is true in this case. *Stimpson*.

lawsuit against Ballew.  This evidence is sufficient to establish retaliatory intent for summary-judgment purposes, despite ABC's arguments to the contrary. [3]

**Back Pay:**  ABC argues that Silva's right to backpay should be limited because ABC offered to reinstate Silva shortly after she was fired.  As a general rule, "a Title VII claimant's rejection of a defendant's job offer normally ends the defendant's ongoing responsibility for back pay...."  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241 (1982).  However, "a rejected offer of reinstatement does not end ongoing backpay liability if the claimant's rejection of the offer was reasonable given the form of the offer and the circumstances surrounding it."  *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1493 (10th Cir. 1989).  The decision as to whether a rejection of reinstatement was reasonable depends on a number of different factors, including the following:  (1) whether the offer of reinstatement was unconditional and included a return to the same job, at the same wage; (2) whether the claimant would have to waive her discrimination claim if she accepted the offer; (3) whether hostility caused by the circumstances of the termination was too great; and (4) the totality of the circumstances surrounding the termination and the offer of reinstatement.  *Id.; see also Smith v. World Ins. Co.*, 38 F.3d 1456, 1464 (8th Cir. 1994); *cf. Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1178 (10th Cir. 2003) (discussing front pay rather than back pay; however, same principles appear applicable to both types of claims).

It should be noted that in the Tenth Circuit, an award of back pay in a Title VII case constitutes equitable relief to be made by the district judge, rather than damages to be awarded by a jury.  *Bartee v. Michelin North America, Inc.*, ___ F.3d ___, 2004 WL 1447976 (10th Cir.); *McCue v. State of Kansas*, 165 F.3d 784, 791-92 (10th Cir. 1999).  Presumably, therefore, it is this Court's

---

[3]While this issue has not been addressed by the parties, the Court notes that ABC's possible liability for retaliation is not foreclosed by the fact that Silva's protected conduct was directed toward a different employer, Ballew.  An employer may not retaliate against an employee even if the employee's underlying discrimination charge concerned a different employer.  *See McMenemy v. City of Rochester*, 241 F.3d 279, 283-84 (2d Cir. 2001).

responsibility to determine as a matter of fact whether Silva's rejection of the reinstatement offer was reasonable.

Given the evidence presented to the Court at this point, the reasonableness issue cannot be resolved on summary judgment.  Silva was fired on June 20th.  On approximately July 11th, she received a telephone call from Gloria Jones, her friend and colleague at ABC.  Jones asked Silva if she would go back to work for ABC, and asked her to fill out another application because her original application had been lost.  [Exh. 3, ABC MSJ, Silva dep. p. 156]  Silva understood that she was being offered her same job back, at the same pay. [*Id.*, p. 159]  However, Silva was never contacted directly by Arnold, who had fired her, or by any other management personnel at ABC; she did not receive a written offer of employment; and there is no evidence that she was assured she would not suffer any further negative consequences as a result of her discrimination claim against Ballew.  Significantly, the Court notes that Eugene Bell, who allegedly caused Silva to be fired, was one of two persons (the other being Ray Bell, Eugene's older brother) who had the right to approve or disapprove of raises or vacation time for ABC personnel, and would have had that power over Silva as well.  [Exh. C, EEOC Resp. to Cortez MSJ, Eugene Bell depo. pp. 138-39]  Silva refused to return to work because she thought she was offered her job back to get her to drop her claim, and because she was "real hurt" by what had happened.  [Exh. 3, ABC MSJ, p. 157]

The Court finds there are issues of fact as to whether Silva's status at work would have been significantly affected if Eugene knew she was back at work for ABC, whether the offer of reinstatement was sufficiently communicated to Silva, whether she reasonably believed she would be pressured to drop her claim against Ballew if she returned to her job at ABC, and therefore whether her refusal to accept the offer of reinstatement was reasonable.  Summary judgment will therefore not be granted on the termination-of-back-pay issue.

**Injunctive Relief:**  ABC's final argument is that there are no facts justifying injunctive relief in this case, and that EEOC's request for such relief should therefore be dismissed from the case.  The Court finds this issue is also not amenable to summary judgment, and should be resolved after further factual development.  The Court's decision to grant or deny injunctive relief in a Title VII case is discretionary, and once a violation of that statute is established the burden is on the defendant to show that further violations are not likely to occur.  *EEOC v. General Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir. 1989).  As will be discussed below, there is evidence in this case that Eugene and Ray Bell ("Ray") control ten to fifteen different corporations, which share interlocking management and administrative personnel and employ many people.  Furthermore, the first thing Eugene did upon finding out that Silva had been hired by ABC, a corporation apparently operating within the Bell "empire," was to either tell Arnold to fire her or, at minimum, to suggest a way she could be fired (for "falsifying" her application).  The Court therefore will withhold judgment on the injunction issue until hearing testimony from Eugene or other management personnel at ABC, Bell Gas, or Cortez, as to the likelihood of further retaliatory actions against personnel who might complain about discrimination.

**Bell Gas and Cortez Motions**

These Defendants both argue they were not Silva's employer, and therefore cannot be held liable for any Title VII violation ABC might have committed.  EEOC does not attempt to show that either Bell Gas or Cortez was Silva's direct employer.  Instead, EEOC's claim against each of these Defendants is that Bell Gas, Cortez, and ABC were part of an "integrated enterprise," such that ABC's actions should be attributed to either Bell Gas, Cortez, or both.  The integrated-enterprise theory has been used in the Title VII or other discrimination contexts for one of two purposes:  (1) to show that a small enterprise with fewer than fifteen employees is actually part of a larger entity, so that the fifteen-employee threshold for Title VII liability can be satisfied; and (2) to impose liability

for one entity's actions on a different company or institution.  *See, e.g., Bristol v. Bd. of County Comm'rs of Clear Creek*, 312 F.3d 1213, 1220-21 (10th Cir. 2002) (ADA case determining that County Commissioners were not employers of Sheriff's Department employee and therefore had no duty to offer him reasonable accommodation for his disability); *Calvert v. Midwest Restoration Servs., Inc.*, 2002 WL 1023659 (10th Cir.) (applying test to determine whether fifteen-employee minimum had been met for Title VII purposes); *but see Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 928 (9th Cir. 2003) (stating that integrated-enterprise test does not determine joint liability, but instead determines only whether a defendant has met the fifteen-employee statutory requirement of Title VII).  Some Circuits have rejected the use of the theory in the employment-discrimination context and have developed their own tests for resolving multiple-employer questions.  *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85-88 (3d Cir. 2003); *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 940-41 (7th Cir. 1999); *see also Anderson*, 336 F.3d at 930-32 (applying different test for purposes of imposing liability on separate business entity).  As noted above, however, the Tenth Circuit has approved of the use of the test and has applied it in several cases.  *See, e.g., Bristol, Calvert*.  The Court will therefore apply the theory in this case.[4]

**Whether Integrated-Employer Question Is Jurisdictional:**  Defendants have raised the issue of whether their status as an employer under Title VII is a jurisdictional question, or is part of the merits of EEOC's case.  This is an important issue because jurisdictional questions are for the

---

[4]Defendants have argued that the integrated-employer theory should not be applied, because this case does not involve a parent corporation and a subsidiary.  The theory is not limited to such situations, however.  *See, e.g., Bristol* (test applied to governmental entities).  Furthermore, all of the theories applied by the various courts that have addressed the matter agree that, where one company has exercised sufficient control over personnel matters and has directed the discriminatory act in question, Title VII liability can be imposed.  *See, e.g., Nesbit*, 347 F.3d at 85 (when parent company has directed the subsidiary's discriminatory act, single employer may be found for Title VII purposes).  EEOC's assertion in this case is that Bell Gas, Cortez, or both exercised control over ABC's personnel matters and directed the retaliatory firing of Silva.  The analysis and result in this case, therefore, would be the same under any test adopted by any Circuit to date.

Court to decide, after finding the necessary facts, while the merits of a case are for the jury to decide. There is a split of authority in the Circuits on this question. *Compare, e.g., Nesbit*, 347 F.3d at 72 (fifteen-employee requirement under Title VII is element of the merits); *Papa*, 166 F.3d at 943 (same); *with Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (fifteen-employee threshold is jurisdictional). In the Tenth Circuit, it appears that in some circumstances the integrated-employer question is jurisdictional, and in others it is not. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 978, n. 2 (10th Cir. 2003). Where the issue is whether the plaintiff's "direct" employer, which has fewer than fifteen employees, should be considered integrated with other entities in order to reach the Title VII fifteen-employee threshold, the issue is jurisdictional. *Id.* However, where it is undisputed that plaintiff's direct employer had fifteen employees, and the question is whether another entity should be considered integrated with the direct employer for liability purposes, the issue is part of the merits. *Id. (*citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993), in which issue was whether parent corporation was plaintiff's employer for liability purposes). In this case, the question regarding ABC's relationship to Bell Gas and Cortez does not concern the fifteen-employee requirement; for that reason, the integrated-employer question is not jurisdictional and the Court will address it as a summary-judgment matter.[5]

**Merits of Integrated-Employer Issue:** "Courts applying the single-employer test generally weigh four factors: '(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.'" *Bristol*, 312 F.3d at 1220 (citations omitted). The third factor, centralized control of labor relations, is generally considered

---

[5]The Court recognizes that the result of applying the Tenth Circuit's position, with respect to case number 02-1213 involving Ballew and Bell Gas, will be somewhat problematic. In that case both questions are involved--whether the employees of Bell Gas should be aggregated with the Ballew employees to reach the jurisdictional threshold, and whether Bell Gas should be held liable for the alleged hostile environment that existed at Ballew. The Court will discuss this issue at more length below, in the section of the opinion addressing Ballew's motions.

the most important.  *Id.*  This centralized-control issue should not be addressed in a general way; instead, the critical question is what entity or entities made final decisions regarding employment matters involving the person claiming discrimination?  *Frank*, *supra*, 3 F.3d at 1363.  Analysis of the evidence presented to the Court, as applied to these four factors, establishes that a genuine issue of material fact exists on the question of whether Bell Gas, or Cortez, or both, make up part of an integrated employer with ABC.

The following evidence, viewed in the light most favorable to EEOC, has been presented by the parties in their summary-judgment materials:  (1)  Ray and Eugene Bell are brothers who "have" ten to fifteen companies [Exh. C, EEOC Resp. to Ballew Mot. Dism./S.J., Lancaster depo., p. 18];[6] (2) For a number of years, Lancaster has been an "office manager" or "administrative assistant" for all of these companies [*Id.*]; (3) In that capacity, Lancaster's job duties have included buying insurance for Bell Gas, Cortez, and ABC; reviewing the bank statements for all three of these companies; making sure there are sufficient funds in each company's account to cover expenditures; and answering questions from employees of any of these companies [*Id.*, pp. 16-18, 59-60; Exh. F, EEOC Resp. to Cortez MSJ, Lancaster depo. p. 9]; (4) Any salary increases for ABC employees must be approved by Ray or Eugene Bell [Exh. C, EEOC Resp. to Cortez MSJ, Eugene Bell depo. pp. 138-39]; (5) payroll checks for ABC, Bell Gas, and Cortez all contain Eugene Bell's mechanical signature and are all issued by an entity called Petroleum Products Company, and payment on the payroll checks for all these companies comes out of one bank account [Exh. 4, Cortez MSJ, Harrell depo. pp. 119-21; Exh. A, EEOC Resp. to Bell Gas MSJ re:  Ballew, Eugene Bell depo. pp. 135-37]; (6)  Petroleum Products Company in fact is not a company or a corporation, it is just a "name on a piece of paper;"  employees and managers of ABC, Bell Gas, and Cortez refer to the entity that issues

---

[6]It is not clear what Lancaster meant by using the word "have"; based on the other evidence contained in the record, the Court interprets the term to mean the Bells have ownership interest in, or some other type of control over, that number of companies.

their paychecks as the "payroll department" [Exh. C, EEOC Resp. to Ballew MSJ, Lancaster depo. pp. 38-40; Exh. D, EEOC Resp. to Bell Gas MSJ re:  Ballew, Ray Bell depo., p. 101]; (7) a building at 1811 S.E. Main, in Roswell, has a sign in front that says "Bell Gas" and another sign that says "Cortez Gas," and both companies are headquartered there [Exh. E, EEOC Resp. to Bell Gas MSJ re:  Ballew, Gary Harrell depo. p. 20]; (8)  all of ABC's corporate records are kept in an office at 1811 S.E. Main; in addition, the payroll functions and bookkeeping are performed there [*id.*, p. 15-18; Exh. 2, Cortez MSJ, Harrell affid.]; (9)  Mike Cleveland, who is an employee of Cortez, is the computer specialist for Cortez, Bell, and ABC; no one else performs computer work for those three companies; if Cleveland does work for ABC, ABC does not pay him a fee but would reimburse any expenses he incurred [Exh. B, EEOC Resp. to Cortez MSJ, Harrell depo. pp. 83-85, 107-08]; (10) Gary Harrell is the president of ABC, as well as a "supervisor" at Cortez who reports only to Ray or Eugene Bell; however, Harrell does not know the name of the alleged "payroll service company" that pays ABC employees [*Id.* pp. 5, 19, 21, 109]; (11) an "employee trust" allegedly owns ABC, and the Bells have no ownership interest in the company; however, Harrell does not know how much money he and Lancaster paid for the company when they bought it, although he was the primary person negotiating the purchase [*Id.* pp. 11-13]; (12) Ray and Gene Bell are considered to be in charge of ABC, Bell Gas, and Cortez, by most high-ranking personnel at those companies [Exh. G, EEOC Resp. to ABC MSJ, Arnold depo. pp. 49, 83-84; Exh. 9, Bell Gas MSJ re:  Ballew, Madsen depo. pp. 50, 55-56, 68-69; Exh. 16A, Bell Gas Reply re:  Ballew, Jobe depo. pp. 170-71; Exh. E, EEOC Resp. to Cortez MSJ, Cleveland depo. pp. 12-13; Exh. C, EEOC Resp. to Ballew MSJ/Mot.Dism., Lancaster depo. p. 14]; (13)  Ray is the president and treasurer of Cortez Gas and Bell Gas, and Eugene is the vice president and secretary of both [Exh. B, EEOC Resp. to Bell Gas MSJ re:  Ballew; Exh. A, EEOC Resp. to Cortez MSJ]; (14)  employees and management personnel of both ABC and Ballew refer to 1811 S.E. Main as the "corporate office" or the "main office;" also, managers hiring

employees for ABC are required to check with "personnel" to determine whether previous employees of "I guess you could say the corporation" – other companies associated with the Bells – are "rehirable" or not [Exh. 1, ABC MSJ, Arnold depo. pp. 76, 78; Exh. 9, Bell Gas MSJ re: Ballew, Madsen depo. pp. 54-55]; and (15) in answering an EEOC request for information concerning ABC's firing of Silva, the company identified Eugene Bell as the person making the final decision to discharge her [Exh. H, EEOC Resp. to ABC MSJ].

The above evidence raises genuine issues of material fact as to every factor considered by the courts in applying the integrated-employer analysis, except possibly one--the common ownership factor.  It appears to be undisputed that ABC is owned by an employee trust, and that neither Ray nor Eugene Bell has an ownership interest in ABC.  However, there is ample evidence of interrelated operations, including evidence that there is no separate payroll services company, but instead a payroll department that provides services to all the Bell companies; that all corporate records of ABC are kept at the "corporate offices" at 1811 S.E. Main; that the same management official, Lancaster, keeps track of the finances of ABC as well as many other Bell companies, including Bell Gas and Cortez; that Ray and Eugene Bell are considered the top level of management of all the Bell companies; and that a Cortez employee is in charge of computer operations for ABC, Bell Gas, Cortez, and other Bell companies.  As to the common management factor, it is apparent there is a question of fact as to whether Ray and Eugene Bell are ultimately in charge of managing ABC as well as Bell Gas and Cortez--Larry Arnold's testimony alone provides support for such a finding.

The most important factor to be considered is the centralized control of labor relations.  There is clearly an issue of fact as to whether Ray and Eugene Bell are in control of all labor relations at ABC as well as Bell Gas and Cortez.  Eugene Bell's signature is on all paychecks issued to employees of the three companies; any raises for ABC employees or other employees of Bell companies must be approved by either Ray or Eugene; Arnold testified that he fired Silva because Eugene had made

13

it clear that is what should happen; and ABC identified Eugene to the EEOC as the person making the final decision to discharge Silva.  In addition to the evidence concerning ABC's personnel office and payroll department being located at the Bell Gas/Cortez Gas building at 1811 S.E. Main, this evidence would be more than sufficient to allow a jury to determine that Ray and Eugene Bell exercise control over all significant labor relations with respect to ABC, Bell Gas, and Cortez.  *See Romano v. U Haul*, 233 F.3d 655, 666 (1st Cir. 2000) (control of employment decisions most significant factor).

In sum, there is evidence that ABC, although not owned by Ray or Eugene, is part of an interrelated group of companies controlled by them in every significant aspect.  This evidence is sufficient to meet the requirements of the integrated-employer test as outlined in *Bristol*, and the Bell Gas and Cortez motions for summary judgment must therefore be denied.[7]

**Ballew's Motions**

**Motion for Summary Judgment or Dismissal, on Jurisdictional Grounds:** Ballew argues that during the time the alleged hostile environment allegedly existed, it was not an "employer" as defined by Title VII, because it did not meet the fifteen-employee threshold established by that

---

[7]The Court recognizes that liability may not be imposed on Bell Gas or Cortez merely by showing that those two companies, as well as ABC, are part of the same group of interrelated entities owned or controlled by the Bells.  Otherwise, every subsidiary of a parent corporation could be held liable for discrimination committed by one subsidiary, simply because the subsidiaries are all under the detailed control of one parent.  In this case, there is a significant amount of evidence showing that Ray and Eugene are in charge of a number of different companies, and that Eugene was the driving force behind the retaliatory firing of Silva.  Those facts alone, however, may not be sufficient to hold either Bell Gas or Cortez liable for the acts of ABC or Eugene, if Bell Gas and Cortez are simply two more companies in the Bell "empire."  There is evidence in this case, however, that the Bells are officers and directors of both Bell Gas and Cortez, that the headquarters of the Bell "empire" are the Bell Gas/Cortez building at 1811 S.E. Main, and that all major administrative functions for ABC take place at that building.  Thus, there is evidence that Eugene may have been acting in his role as a manager of either Bell Gas or Cortez, or both, when he involved himself in Silva's firing, and that ABC is more of a subsidiary company of Bell Gas or Cortez, than an equal co-member of the Bell "empire."  This evidence would therefore be sufficient to find Bell Gas or Cortez liable for the allegedly retaliatory firing.

statute.  In response, EEOC argues two things:  first, that four Bell Gas employees who performed significant services for Ballew should be counted as Ballew employees for purposes of Title VII; and second, that Ballew and Bell Gas are engaged in an integrated enterprise, and for that reason all Bell Gas employees may be aggregated with Ballew employees to determine that Ballew is in fact an "employer" for Title VII purposes.  EEOC cited no authority for the proposition that individuals who are admittedly employed by a different company may be considered employees of the discriminating company, in order to qualify the discriminating company as a Title VII employer.  As discussed below, however, the Court finds there is at least a question of fact as to whether Bell Gas and Ballew are part of an integrated enterprise, and the Court will deny Ballew's motion on that basis.  Therefore, the Court need not address the "borrowed employee" theory EEOC is apparently attempting to argue.[8]

**Integrated-Employer Theory as Jurisdictional Question:**  As noted in the previous section of this opinion, the Tenth Circuit has in effect held that the Court must decide whether the integrated-employer doctrine applies for purposes of reaching the fifteen-employee jurisdictional threshold, and the jury will then decide whether that doctrine applies for purposes of imposing liability on an entity that is not the plaintiff's direct employer.  *See Trainor, supra,* 318 F.3d 976, 978, n. 2.  The first question to be answered is whether the two issues are redundant--that is, by deciding the issue with respect to the fifteen-employee threshold, does the Court preclude the jury from re-examining the issue for liability purposes?  The Court does not believe this is true.

Even though the test is called the integrated-employer test for both purposes, and the same factors have been discussed in relation to both purposes, the Court finds the integrated-employer analysis is somewhat different for the fifteen-employee issue than for the imposition-of-liability issue.

---

[8]Similarly, the Court need not address EEOC's argument that Ballew's count of its employees omitted one or more employees, raising the count from fourteen to at least fifteen.

The Tenth Circuit has already impliedly held that this is true.  In *Bristol v. County Comm'rs*, *supra*, 312 F.3d at 1220-21, the Tenth Circuit held that county commissioners were not an employer of a sheriff's department employee, for purposes of requiring the commissioners to accommodate the deputy's disability.  In doing so, the Tenth Circuit distinguished *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980), which held that for purposes of the fifteen-employee threshold, the sheriff was an agent of the county, so all county employees could be included for jurisdictional purposes.  The only basis for the distinction was the fact that *Owens* involved the fifteen-employee issue, while *Bristol* concerned the county's liability.  The Tenth Circuit did not explain why this distinction made a difference, but as discussed below the Court believes it is logical.

The purpose of the fifteen-employee minimum is obviously to exempt small employers from the expense and other burdens imposed by Title VII.  Where separate entities are actually operating as part of a larger whole, it makes sense to allow aggregation of the employees for purposes of the jurisdictional requirement, because the "employer" involved in the case is not truly the type of small employer Congress intended to benefit by enacting the minimum.  However, aggregating employees in order to impose liability on a separate entity, which may be separately incorporated, is a different matter which, in the Court's opinion, requires somewhat different proof.  The Court has already alluded to this distinction in footnote 6, *supra*.  In this case, for example, there is evidence that Bell Gas and Ballew are part of a group of companies controlled by Ray and Eugene Bell.  Furthermore, there is evidence the companies operate in an integrated manner.  It is logical and fair, therefore, to aggregate the employees of the companies together in deciding whether the fifteen-employee threshold has been met, because Ray and Eugene Bell are obviously not small employers.  However, because the companies are separately incorporated, the Court believes there should be evidence that Bell Gas was involved in the claimed discrimination in order to override the limited liability feature of incorporation and impose liability on Bell Gas for acts performed by Ballew.  *See, e.g., Frank v.*

16

*U.S. West, supra*, 3 F.3d at 1362 (because law allows businesses to incorporate to limit liability and isolate liabilities among separate entities, there is a strong presumption that a parent corporation is not the employer of its subsidiary's employees).  Therefore, the Court will decide the jurisdictional issue of whether Bell Gas and Ballew are sufficiently integrated to allow aggregation of their employees for purposes of reaching the fifteen-employee threshold.  The Court's decision will not, however, prevent the jury from deciding differently for purposes of imposing liability on Bell Gas.

The Court must also address the issue of whether to make final factual determinations at this time, or to hold an evidentiary hearing and allow submission of further evidence.  Based on the evidence submitted during the summary-judgment process, the Court is ready to make a final ruling.  This is especially true since much of the evidence is undisputed or comes from statements made by Bell Gas or Ballew employees, or Ray and Eugene Bell.  In the interest of fairness, however, the Court's ruling on the issue will be provisional.  Should Ballew or Bell Gas have any further evidence they wish to submit, or have good grounds to request an evidentiary hearing, an appropriate motion should be made within ten days of the date this opinion is filed.

**Merits of Integrated-Employer Issue:**  Much of the evidence discussed above concerning the relationships between ABC, Bell Gas, and Cortez is similar for the relationship between Bell Gas and Ballew.[9]  For example, Eugene Bell's signature is on all paychecks issued to Ballew employees as well as Bell Gas employees, and the checks are issued by same entity that, according to Lancaster, is just a name on a piece of paper, is not a separate company or corporation, and is commonly referred to as the payroll department; salary increases at Ballew had to be approved by Eugene or Ray; Lancaster bought insurance for Bell Gas and Ballew and reviewed the financial status of each company; the same computer specialist is in charge of the computers for Bell Gas and Ballew, as well

---

[9]The Court will not repeat the citations to the record that have already been provided in prior sections of this opinion.

as other companies; and Ballew's corporate records, including personnel records, are kept at the Bell Gas/Cortez Gas building at 1811 S.E. Main.

In addition, there is other evidence in the record indicating that Ballew's interrelationships with Bell Gas are even stronger than ABC's relationships to Bell Gas and Cortez.  A former manager of Ballew, Carroll Madsen, testified in his deposition that the computer program at Ballew was tied into the mainframe at Bell Gas, Inc. [Exh. 9, Bell Gas MSJ re:  Ballew, Madsen depo. p. 66].  He also testified that Ray Bell had authority to write policy for Ballew, and that all bookkeeping for Ballew was done at the "corporate office" [*Id.*, pp. 54, 68].  Lancaster testified that if Ballew's bank accounts were not meeting expenditures, he would have Andrea Williams, a Bell Gas employee, review Ballew's accounts receivable and try to collect amounts owed to the company [Exh. A, EEOC Resp. to Ballew MSJ/Mot. Dism., Silva affidavit; Exh. C, same, Lancaster depo. pp. 42-44].  Lancaster also testified that Ballew's checkbook is kept at the Bell Gas/Cortez building, not at Ballew's "other" office [Exh. C, *id.*, p. 58].  Ray is the President and Secretary of Ballew and Eugene is the Vice President and Treasurer, and both are also officers of Bell Gas  [Exh. C, EEOC Resp. to Bell Gas MSJ re:  Ballew].  Eugene approved a vacation request submitted by Silva, when she was employed by Ballew [Exh. U, EEOC Resp. to Bell Gas MSJ re:  Ballew].

Significantly, there is evidence that Ray and Eugene are in charge of preventing discrimination from occurring in the workplace at all the Bell companies, including Bell Gas and Ballew -- Ray testified that any employee of a Bell company could bring a complaint to him or Eugene, whether or not the company had an anti-discrimination policy in place.  [Exh. J, EEOC Resp. to Cortez MSJ, Ray Bell depo. p. 100]  Furthermore, there is evidence that Ray and Eugene are in charge of investigating discrimination claims.  [Exh. W, EEOC Resp. to Bell Gas MSJ re:  Ballew].

All of the foregoing evidence indicates Bell Gas and Ballew are two of a number of companies controlled by Ray and Eugene Bell, with interlocking management, cross-use of employees without

compensation, and other indicators of relationships  that are closer than those that normally exist between fellow subsidiaries.  Also, Ray and Eugene have ultimate control over most employment decisions made at Bell Gas and Ballew, including decisions to give raises to employees and even to allow them to take vacation time.  Finally, Ray and Eugene are in control of the employment discrimination arena at these two companies.  The Court therefore provisionally finds that the employees of Bell Gas and Ballew should be aggregated in determining whether the fifteen-employee minimum established by Title VII has been met.

**Motion for Summary Judgment on Merits:**  Ballew has withdrawn most of this motion, leaving only the argument that EEOC's request for injunctive relief should be dismissed.  The Court notes the following:  (1)  Silva was not the only Ballew employee who filed a charge of gender-based harassment, although the other employee has settled her claim; (2)  Carroll Madsen, the Ballew manager who has been accused of committing the alleged harassment, testified that he had a very brief meeting with Ray and Eugene, and that nothing happened to him after that meeting [Exh. H, EEOC Resp. to Bell Gas MSJ re:  Ballew, Madsen depo. pp. 126-27]; and (3) as pointed out above, there is evidence that Eugene's reaction to Silva's discrimination complaint was hostile enough that he made it plain he did not want her working for ABC because of that complaint.  The Court finds there is a dispute of fact as to whether injunctive relief might be warranted in this case to prevent future acts of discrimination against employees of any Bell company.[10]

---

[10]The Court notes Ballew's argument that injunctive relief is inappropriate because Silva is no longer employed by Ballew, and therefore cannot benefit from any injunction that might issue. This argument is misplaced; EEOC is the Plaintiff in this case, not Silva.  EEOC is entitled to obtain injunctive relief to protect current and future employees of Bell companies.  *See EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1253 (11th Cir. 1997) (claimant's decision not to seek reinstatement did not prevent EEOC from pursuing broader equitable remedies, since EEOC and not the individual claimant was suing; EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly-situated employees).

**Bell Gas Motion for Summary Judgment**

The evidence discussed in the preceding sections raises an issue of fact as to whether Bell Gas should be held liable for any discrimination occurring at Ballew, under the integrated-employer test. A reasonable jury could find that Bell Gas, through its officers Ray and Eugene, has such authority over Ballew's labor relations as to allow Ballew's discriminatory actions to be attributed to Bell Gas.[11]  This motion for summary judgment will therefore be denied.

**Conclusion**

Based on the foregoing, all of the motions for summary judgment filed in both of these cases will be denied.

**ORDER**

A Memorandum Opinion having been entered in this case, it is ORDERED that the following motions for summary judgment be, and hereby are, DENIED:  ABC Propane's motion for summary judgment on the merits (Doc. 82); two motions for summary judgment filed by Bell Gas, Inc. (Docs.83, 84); Cortez Gas Company's motion for summary judgment (Doc. 85); and two motions filed by Ballew Distributing (Doc. 80 , 82).  It is furthermore ORDERED that this Memorandum Opinion and Order be filed in both of the following cases:  CIV 02-1212 and CIV 02-1213.

---

[11]The Court must again emphasize, however, that if Ray, Eugene, or both were acting in their capacity as officers of Ballew, rather than Bell Gas, and if Bell Gas is in the position of merely being a fellow member of the Bell "empire" of companies, no liability should be assigned to Bell Gas simply because its managers and directors are the same as those of Ballew.

Dated this 20th day of July, 2004.


_____
BRUCE D. BLACK
United States District Judge


**ATTORNEYS**:

**For Plaintiff**:
Veronica Molina
Loretta Medina

**For Defendants**:
Mark E. Komer
Erika E. Anderson